# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information related to Hotmail account jm61@hotmail.co.uk (the "Account") that is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, a company headquartered at 1 Microsoft Way, Redmond, WA 98052. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 23-1841M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 951 and 22 U.S.C. § 611 | Acting in the United States as an agent of a foreign government without prior notification to the Attorney General. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Christopher Sickler
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ *(specify reliable electronic means).*

Date: 10/27/2023

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Christopher W. Sickler being first duly sworn, hereby depose and state as

follows:

## INTRODUCTION AND AGENT BACKGROUND

I am a Special Agent with the FBI and have been since July 2015. I am involved in

investigations of persons suspected of violations of Federal law in the State of

Wisconsin and throughout the United States. I have gained experience conducting

investigations through formal training and consultation with local, state, and federal

law enforcement agencies as well as from law enforcement investigations themselves. I

have assisted in multiple criminal investigations and participated in numerous search

and arrest warrants related to such investigations.

The facts in this affidavit come from my personal observations, my training and

experience, and from information obtained from other agents and witnesses. This

affidavit is intended to show simply that there is sufficient probable cause for the

requested warrant and does not set forth all of my knowledge about this matter.

Based on the facts as set forth in this affidavit, there is probable cause to believe

that the information described in Attachment A contains evidence of violations of 18

U.S.C. § 951 and 22 U.S.C. § 612, as described in Attachment B.

## JURISDICTION

This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

1.      Microsoft Corporation is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2).

2.      This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711.  *See* 18 U.S.C. § 2703(d).  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated.  *See* 18 U.S.C. § 2711(3)(A)(i).

## LEGAL BACKGROUND

3.      The United States is investigating foreign influence by the government of the People's Republic of China ("PRC") against the United States. The investigation concerns possible violations of, *inter alia*, 18 U.S.C. § 951 and 22 U.S.C. § 612 *et seq.*

*Illegal Agents of Foreign Governments, 18 U.S.C. § 951*

4.      Title 18, United States Code, Section 951 provides that, "[w]hoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Attorney General if required," shall be punished.  With several exceptions, § 951 defines the term "agent of a foreign government" as "an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official."  18 U.S.C. § 951(d).

2

*The Foreign Agents Registration Act*

5.      The Foreign Agents Registration Act ("FARA") prohibits any person[1] from acting "as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement . . . or unless he is exempt from registration . . . ."  22 U.S.C. § 612(a).[2]  FARA's purpose is to facilitate the government's and the American people's evaluation of the statements and activities of such persons in light of their function as foreign agents.

6.      An agent of a foreign principal is required to register with the Attorney General within ten days of becoming an agent.  22 U.S.C. § 612(a).  To establish a criminal violation for failing to register under FARA, the government must prove that the defendant: (1) acted in the United States as an agent of a foreign principal; (2) failed to register with the Attorney General; and (3) acted willfully.[3]  22 U.S.C. § 612(a).

---

[1] The statute includes within the definition of "person" "an individual, partnership, association, corporation, organization, or any other combination of individuals."

[2] One such exemption is available to an agent who has engaged in lobbying activities and who has registered under the Lobbying Disclosure Act of 1995 ("LDA"), 2 U.S.C. § 1601.  22 U.S.C. § 613(h).  The LDA exemption is not available, however, to an agent of a foreign government or a foreign political party, or if the principal beneficiary of the agent's work is a foreign government or a foreign political party.  28 C.F.R. § 5.307.  Due to this limitation and to the fact that none of the subjects of the investigation registered under the LDA, the exemption does not apply to the conduct under investigation in this case.

[3] "Willfully" means to act with knowledge that one's conduct is unlawful and with the intent to do something that the law forbids, that is to say, with the bad purpose to disobey or disregard the law.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 n.9 (2007); *Bryan v. United States*, 524 U.S. 184, 191-196 (1998).

3

7.     As defined by FARA, the term "foreign principal" includes, in relevant part, foreign governments, foreign political parties, individuals located outside the United States who are not U.S. citizens or who are not domiciled in the United States, and businesses organized under a foreign country's laws or that have their principal place of business in a foreign country.  22 U.S.C. § 611(b).  In any action brought under FARA, "proof of the specific identity of the foreign principal shall be permitted but is not necessary."  22 U.S.C. § 618(a)(1).

8.     The term "agent of a foreign principal" is in turn defined, in relevant part, as "any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person (i) engages within the United States in political activities for or in the interests of such foreign principal . . . ."  22 U.S.C. § 611(c)(1).

9.     Under FARA, "political activities" are defined to include "any activity that the person engaging in will, or that the person intends to, in any way influence any agency or official of the Government of the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relation of a government of a foreign country or a foreign political party."  22 U.S.C. § 611(o).

Case 2:23-mj-01841-SEAL Filed 06/27/23 Page 4 of 22 Document 1

I. MILLER and JACK

10.     On October 5, 2022, a full investigation was opened on John MILLER. Miller's date of birth is June 13, 1961; he is a United Kingdom citizen and United States Lawful Permanent Resident. On or about June 6 – 8, 2023, in the Eastern District of Wisconsin, a newly opened confidential human source (CHS) reported to the FBI that they were in direct contact with MILLER for over two years, and during that time MILLER tasked the CHS to write Internet articles and produce a documentary that would paint the United States in a negative light regarding "human rights violations" committed by the United States across a variety of timeframes and topics. Two such examples are (1) a tasking to publish an article on human rights violations committed in the United States by the United States from the time of slavery to the present, and (2) writing articles on human rights atrocities committed by the United States overseas, specifically regarding United States military involvement in Afghanistan.

11.     In addition, MILLER tasked the CHS with staging protests in the United States against the United States government regarding human rights issues and United States foreign policy. More specifically, in April 2023, MILLER tasked the CHS with staging a protest in the U.S. against the visiting President of Taiwan, who was meeting with an elected United States representative.

12.     On or about June 6 – 7, 2023, the CHS reported to the FBI that MILLER's requests for Internet articles that would paint the United States in a negative light regarding its "human rights violations" came to MILLER, in turn, from an individual named Cui Guanghai (a/k/a "JACK"). During the time of the taskings, and as of June

5

14, 2023, JACK lived in China and was believed by both MILLER and the CHS to be working for or affiliated with the Government of China.

13.     Based upon my training and experience and knowledge of the investigation, the FBI's current understanding is that JACK is operating on behalf of the PRC government and has tasked MILLER with passing foreign influence taskings on to third parties, like the CHS, to be performed in the United States on behalf of the PRC government.

14.     On or about June 24, 2023, the CHS reported that MILLER returned from a June 2023 trip to China and said to the CHS, "the China trip couldn't have gone better." While in China, the CHS reported, MILLER met with Liaoning government officials and went to Beijing to meet with Chinese central-government-level officials. MILLER was reportedly impressed by his trip to China and said to the CHS that it is so much better there than they tell you it is. MILLER stated to the CHS that he believed he was Chinese in a past life, and he expressed to the CHS his loyalty to China over the U.S.

15.     MILLER further claimed to the CHS that he had been promoted and that his involvement has reached the next stage. Based on my training and experience, it is reasonable to conclude from this comment from MILLER that MILLER's work with JACK to date has been deemed good enough to elevate MILLER's status with JACK, thus allowing for complex taskings and/or more trust with sensitive information. While in China, MILLER claims to have met with NANCY (LNU), whose boss is the Governor of Liaoning Province in China. MILLER told the CHS that NANCY ran fourteen cities in Liaoning, China. Based on my training and experience, this positions her at the very

6

least as a bureaucrat within the provincial-level Chinese government, and likely responsible for aspects of provincial level governance. At this time, we do not know specifically what NANCY's role is. It is not clear what overlap there may be with NANCY's position under the Governor of Liaoning, her relationship with JACK and JACK's network, and any potential domestic Chinese intelligence work. MILLER explained that each province in China, including Liaoning where JACK lives, has teams working in it that conduct activities like JACK does and are very compartmentalized.

16.     In addition to meeting NANCY, MILLER claims to have met with ROMAN (LNU). According to MILLER, ROMAN is JACK's "main guy" in China. ROMAN takes work to bigger people inside the government of China who "break down doors." Toward the end of his trip to China, JACK took MILLER to meet JACK's bosses in Beijing, two powerful people who MILLER referred to as "big motherfuckers." MILLER and JACK met with ROMAN's team leader. Based on my training and experience, ROMAN is JACK's handler in China. These handlers are typically Intelligence Officers for the Chinese Government.

17.     As part of MILLER's trip to China in June 2023, he was tasked by people in China to write a 35-page dossier on himself outlining all his capabilities and work to date.

18.     Following MILLER's return from China, Miller told the CHS that PRC government officials told him they were interested in arranging for protests in the United States, but that their current priority is to place a news article in the New York Times. That story appears to be a false report that U.S. politicians have received bribe

7

money to change their policy positions with regard to Taiwan. MILLER told the CHS that the Chinese government officials will plan for when they want the story to break and will quite possibly send JACK to the U.K. with evidence for the CHS to support his efforts to influence the U.S. public on behalf of the Chinese government. The story was not published in any US-based news outlets that we know of.

19.     MILLER also stated that JACK told him that something was lined up in Australia regarding an individual of interest to the PRC government. When MILLER jokingly said what do you mean, "you gonna kill a guy?", JACK told him "no, that's not what we do. It's the Russians who do that, we just want to get information from the person in Australia." MILLER told the CHS what they're doing is "totally, absolutely fucking illegal." To that end, MILLER was scheduled to have a meeting on or about June 26, 2023, with people who had access to Australia regarding this project. It is unknown if this meeting was in person or virtual.

20.     Based upon my training, experience, and FBI information that is publicly available, the activity described above regarding the individual of interest in Australia is presumed to be Operation Fox Hunt activity. According to FBI Director Wray, in remarks at a joint DOJ and FBI press conference, he said this about Operation Fox Hunt activity:

> Fox Hunt is a sweeping bid by General Secretary Xi and the Chinese Communist Party to target Chinese nationals here in the United States and across the world who are viewed as threats to the regime . . . . It's important to understand that Fox Hunt is part of the Chinese government's diverse campaign of theft and malign influence. China is violating laws and norms left and right, from sophisticated cyber attacks targeting our data and personal information, to economic

espionage targeting our intellectual property and our trade secrets. And they're using that information to gain influence on the world state, to gain economic and political power. All to their benefit, and all very much to our detriment.

Further open-source news articles describe Operation Fox Hunt as including the targeting, harassing, and attempted repatriation of Chinese individuals abroad.

21.     MILLER then spoke about another project in Australia that, in his words, was supposedly a legitimate business deal regarding Chinese State-Owned Enterprises (SOE) operating in Australia. These industries included copper, aluminum, and oil. MILLER would be the PRC government's person-in-charge in Australia and would make a lot of money.

22.     MILLER was going to send one of his contacts to meet one of JACK's contacts in or around the Amman, Jordan area to discuss an oil deal with the Saudis.

23.     MILLER reiterated, after his trip to China, that the people MILLER met with in China are definitely interested in learning about disgruntled American military personnel, any "fucked up" operations in Afghanistan, or anything along those lines. MILLER stated that they were also interested in any human rights cases generally.

24.     On June 26, 2023, during a phone call with MILLER, the CHS told MILLER they were in Milwaukee, Wisconsin. The CHS mentioned to MILLER that the Republican National Convention would take place in Milwaukee. MILLER was initially uninterested, but after some consideration, he said he would bring it up with JACK and see what he and the bosses thought.

25.     Based on my training and experience, these taskings that MILLER discussed with and/or requested of the CHS are consistent with someone who is working at the behest of foreign government intelligence officers (IO) or individuals who do the bidding of an IO in various countries. The FBI refers to these individuals as co-optees. These co-optees will often conduct intelligence operations for IOs who do not have access to the country in question or want a layer of anonymity between themselves and their operation to ensure their country's name is not attached to the operation should it be discovered.

26.     For example, according to an October 28, 2020, U.S. Department of Justice press release, eight defendants were conspiring to act in the United States as illegal agents of the PRC.  The defendants, allegedly acting at the direction and under the control of PRC government officials, conducted surveillance of and engaged in a campaign to harass, stalk, and coerce certain residents of the United States to return to the PRC as part of Operation Fox Hunt.

27.     Information provided by the CHS to FBI handlers has been corroborated in the past. The CHS is motivated by monetary compensation and claimed to be trying to do the right thing with regard to China.

II.      MILLER and JACK's E-Mail Correspondence in Furtherance of Chinese
         Foreign Influence Efforts

28.      On or about June 6 – 8, 2023, the CHS provided the FBI with a screenshot
of an email contact card that MILLER used to communicate the Internet article taskings
described above. This contact card showed MILLER's email address:
"jm61@hotmail.co.uk". Federal Grand Jury subpoena (2022R00488-18) returns for John
MILLER from CashApp/Block, Inc., confirmed that the email address
"jm61@hotmail.co.uk" was associated with MILLER.

29.      On or about June 22, 2022, MILLER - from the email address
"jm61@hotmail.co.uk" - sent the CHS an email seemingly with a tasking to write stories
regarding (1) the number of COVID-19 deaths in the U.S. that were caused by the two
primary American political parties fighting; and (2) race relations and shootings of
Black and Asian people in the United States. Based on my training and experience and
knowledge of the investigation, I assess that this campaign was likely in furtherance of
a suspected Chinese foreign malign influence campaign and was likely intended to
advance the narrative that the United States has human rights issues and therefore that
countries should not fixate on alleged Chinese violations of, for example, Uighur
human rights.

30.      On June 23, 2023, a 2703(d) order (App. No. 15569) was served on
Microsoft for email account jm61@hotmail.co.uk. On September 25, 2023, App. No.
15569 was returned to the FBI. According to subscriber information located within the
return, the account jm61@hotmail.co.uk belonged to MILLER.

31.     MILLER and JACK, via their statements and actions, appear to be working on behalf of a foreign power against the United States and its allies without registering as agents of that foreign power. Miller has also proven willing to use e-mail correspondence to communicate taskings from the foreign power to the individuals meant to execute those taskings.

III.     Department of Justice Database Checks

32.     According to Department of Justice database checks in October 2023, neither MILLER nor JACK have ever registered under FARA or notified the U.S. Attorney General under 18 U.S.C. § 951 as an agent of China or the PRC Government.[4]

**CONCLUSION**

Based on the forgoing, I request that the Court issue the proposed search warrant.

Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Microsoft Corporation. Because the warrant will be served on Microsoft Corporation, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

---

[4] Pursuant to 28 C.F.R. § 73.3(b) and (c), foreign agents engaged in certain law enforcement or judicial activities may make their Section 951 notifications to Interpol, an FBI Legal Attaché, or the Department of Justice's Office of International Affairs. Based on this investigation, MILLER and JACK do not fall into the categories of foreign agents who would make such notifications to these entities.

**REQUEST FOR SEALING**

I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give the target(s) an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Case 2:23-mj-01841-SEALED Filed 10/27/23 Page 14 of 22 Document 1

# ATTACHMENT A

## Property to Be Searched

This warrant also applies to information related to Hotmail account **jm61@hotmail.co.uk** (the "Account") that is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, a company headquartered at 1 Microsoft Way, Redmond, WA 98052.

**ATTACHMENT B**
**Particular Things to Be Seized**

The Provider is hereby ordered to disclose the above information to the Government within **14** days of the issuance of this warrant.

### I. <u>Information to be seized by the government</u>

All information described above in Section I that constitutes evidence and/or instrumentalities of violations of 18 U.S.C. § 951 and 22 U.S.C. §§ 611 et seq. involving the subscriber since **January 1, 2019**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.  Records and information of the subscribers acting as an unregistered foreign agent of the People's Republic of China;

b.  Records and information regarding the subscriber's ties to other individuals who are party to the violations set forth in this application;

c.  Records and information relating to targets or potential targets of violence, by the subscriber;

d.  The identity of the person(s) who created or used the Hotmail account;

e.  Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and the account subscriber;

f.  Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

Case 2:23-mj-01841 SEALED Filed 06/27/23 Page 16 of 22 Document 1

g.      Evidence indicating the subscriber's state of mind as it relates to the crime under investigation, including interests and motivations; and

h.      Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, and other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## II. Information to be disclosed by Microsoft Corporation (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any information that has been deleted but is still available to the provider or has been preserved pursuant to a request made under 18 U.S.C. § 2703(D), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A for the time period **January 1, 2019 to present**:

**Microsoft**

• **SUBSCRIBER AND ACCESS RECORDS:** All business records and subscriber information, in any form kept, pertaining to the account, including: full name; physical address; telephone numbers, including SMS recovery and alternate sign-in numbers;

16

alternative and recovery email addresses, including those provided during registration; usernames, screennames and other identifiers; account status; account creation date; account registration IP address; length of service; records of session times and durations, including log-in IP addresses; methods of connecting; log files; subscriber change history; means and source of payment (including any credit or bank account number); and detailed billing records;

• **DEVICES:** All device information associated with the accounts, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

• **SERVICES:** All records and other information (including records of non-content user activity for each connection made to or from the Account(s), the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Microsoft service, and all activity logs) associated with the Accounts, including those related to the use of all Microsoft services, including but not limited to the following Microsoft services: Calendar, Contacts, OneDrive, OneNote, Hotmail, Skype, Location History, Photos, and Search History;

• **FORWARDING OR FETCHING ACCOUNTS:** All forwarding or fetching accounts relating to the accounts;

• **BROWSING, SEARCH, and APPLICATION USE HISTORY:** All Internet search, browsing history, and application usage history, such as Web & App Activity,  from **January 1, 2019 to present**, including: search terms; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; all text typed into the Microsoft Edge address bar or Edge search bar, including URLs and IP addresses; all URLs or IP addresses clicked on; user settings; and all associated logs and change history;

**PAYMENT:** All payment and transaction data associated with the account, including: records of purchases, money transfers, and all other transactions; stored credit; gift and loyalty cards; associated payment cards, including any credit card or bank account number, PIN, associated bank, and other numbers; and all associated access and transaction logs, including IP address, time stamp, and change history;

**LINKED ACCOUNTS:** For all Microsoft Corporation Accounts that are linked to any of the accounts listed in Attachment A by cookies; recovery, secondary, forwarding; or alternate email address; IMEI; or telephone number, including SMS recovery number or sign-in account number, provide:

a. Names (including subscriber names, user names, and screen names);

b. Addresses (including mailing addresses, service addresses, residential addresses, business addresses, and e-mail addresses);

c. Local and long distance telephone connection records (including records of text messages sent and received) from **January 1, 2019 to present**, if applicable;

d. Records of session times and durations from **January 1, 2019 to present**, if applicable;

e. Length of service (including start date) and types of service utilized;

f. Telephone or instrument numbers (including model type/numbers, phone numbers, IMSIs, IMEIs, MEIDs, UDIDs, MAC addresses, and advertising IDs);

g. Other subscriber numbers or identities, including any temporarily assigned network addresses (including the registration and session Internet Protocol ("IP") addresses with associated port numbers); and

h. Means and source of payment for such service (including any credit card or bank account number).

• **LOCATION HISTORY:** All records indicating the location at which the account was active, such as Location History and Web & App Activity, including: GPS data; cell site/cell tower information; IP addresses; information associated with each location record, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, and inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car); and associated logs and user settings, including Timeline access logs and change history;

**Hotmail**

• **HOTMAIL**: The contents of all emails associated with the account; including, but not limited to: stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the date and time at which each email was sent; the size and length of each email and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

18

• **CONTACTS:** Any records pertaining to the user's contacts, including: address books; contact lists, including autocomplete suggestions; social network links; groups; user settings; and all associated logs and change history;

• **CALENDAR:** Any records pertaining to the user's calendar, including: Microsoft Outlook entries; Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history;

**OneDrive**

• The contents of all records associated with the account in OneDrive (including Documents, Excel, OneNote, PowerPoint, photos, videos, and other media stored on OneDrive); the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Microsoft service or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

**Skype**

• **SKYPE**: All Skype records associated with the account, including: associated telephone numbers, including forwarding numbers; connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history;

The Provider is hereby ordered to disclose the above information to the Government within **14** days of the issuance of this warrant.

## II.   <u>Information to be seized by the government</u>

All information described above in Section I that constitutes evidence and/or instrumentalities of violations of 18 U.S.C. § 951 and 22 U.S.C. § 612 involving the subscriber since **January 1, 2019,** including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      Records and information of the subscriber's acting as an unregistered foreign agent of China;

Case 2:23-mj-01841-DUTY *SEALED* Filed 10/27/23 Page 20 of 22   Document 1

b.      Records and information regarding the subscriber's ties to other individuals who are party to the violations set forth in this application;

c.      Records and information relating to targets or potential targets of violence, by the subscriber;

d.      The identity of the person(s) who created or used the Hotmail account;

e.      Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and the account subscriber;

f.      Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

g.      Evidence indicating the subscriber's state of mind as it relates to the crime under investigation, including interests and motivations; and

h.      Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, and other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the

custody and control of attorneys for the government and their support staff for their

independent review.